IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br><br>vs<br><br>**1) WILFREDO FELICIANO-RODRIGUEZ**<br>a/k/a Wilfre<br>(Counts One, Two, Four and Six)<br>2) JOSE L. CLAUDIO-ORTIZ, a/k/a Pella<br>(Counts One, Two and Five)<br>3) JORGE L. RODRIGUEZ-ROSA,<br>a/k/a Cuquito<br>(Counts One and Two)<br>4) ALFRED RODRIGUEZ-RIOS<br>a/k/a Fredito<br>(Counts One, Two and Three)<br>5) HECTOR M. NIEVES-RIVERA,<br>a/k/a Cancort<br>(Count One)<br>6) JUAN ROJAS-RODRIGUEZ, a/k/a Tito<br>(Count One)<br>7) JOSE G. RODRIGUEZ-ROSA,<br>a/k/a Gageth<br>(Count One)<br>8) OMAR MEDINA-TORRES<br>(Count One)<br>9) JOSUE ROSARIO, a/k/a Ruso<br>(Count One)<br>10) ERNEST VELAZQUEZ-CASANOVA<br>(Count One)<br>11) ALEXIS LEBRON-MARCON<br>(Count One) and<br>12) FELIX OMAR MELENDEZ, a/k/a Omy<br>(Count One)<br>Defendants | CRIMINAL 04-0052CCC |

**O R D E R**

Before the Court are the Objections to Presentence Report filed by the United States (**docket entry 445**) and by defendant Wilfredo Feliciano Rodríguez (**docket entry 447**). The government objects to paragraph 34 of the Pre-Sentence Report (PSR), claiming that while it correctly stated that the statutory minimum term of imprisonment for Count Four was seven (7) years, it erroneously established that the statutory minimum term of imprisonment for Count Six was also seven (7) years. The government advanced, relying on the language of 18 U.S.C. §924(c)(1(A) and its interpretation in Deal v. U.S., 508 U.S. 129, 113 S.Ct. 1993 (1993), that as the conviction for Count Six constituted a "second or subsequent conviction"

under §924(c)(1)(A), the statutory minimum term of imprisonment for said count was twenty-five (25) years. The Court, has noted, however, that the PSR filed with the Court appears to have been corrected in accordance with the government's contention as to the applicable sentences for Counts Four and Six, as it indicates that Count Four requires a mandatory consecutive sentence of seven (7) years and Count Six a term of twenty (25) years. See PSR, p. 11, ¶ 39. Thus, it would appear that the government's objection has turned moot. But since defendant had responded to the objection (**docket entry 448**) arguing that the government's interpretation of the statute is inapposite since the second conviction under §924(c)(1) resulted from the same events, we pause to address the matter briefly.

In essence, defendant's argument is that he cannot receive punishment for a "second or subsequent" §924(c)(1) conviction when the first conviction occurs in the same proceeding and as a result of the same underlying predicate offense. However, it has already been established that a second or subsequent §924(c)(1) conviction may arise from a single criminal episode. Deal v. U.S, supra.; United States v. Romero, 122 F.3d 1334, 1343 (10th Cir.1997); United States v. Parra, 2 F.3d 1058, 1062 (10th Cir.1993). It has also been held that "consecutive sentences under section 924(c)(1) are appropriate whenever there have been multiple, separate acts of firearm use or carriage, even when all of those acts relate to a single predicate offense." United States v. Camps, 32 F.3d 102, 106 (4th Cir.1994). Thus, the conviction on Count Six is a "second or subsequent conviction" under §924(c)(1) requiring a sentence of at least twenty-five (25) years. The PSR correctly stated the respective terms of imprisonment applicable to Counts Four and Six.

Defendant, in turn, has raised objections to the determination of the amount of cocaine attributed to him made by the U.S. Probation Officer and explained in paragraphs 19, 21 & 22 of the PSR. The Probation Officer's determination was mainly based on the testimony of co-defendant Omar Medina, who described at length the operation of defendant's drug "point" located at the Nuestra Señora de la Covadonga, Trujillo Alto, Puerto Rico. We have reviewed the trial notes of the testimony of co-defendant Medina, and are convinced that the drug quantity attributable to, or foreseeable by, defendant Feliciano-Rodríguez was for an amount of cocaine in excess of 150 kilograms. See United States v. Colón-Solís, 354 F.3d 101 (1st Cir.2004). Medina testified that defendant became the leader of the drug point at Covadonga housing project in April 2003 and supervised it up to the date of his arrest in June 1, 2004.

CRIMINAL 04-0052CCC					3

The drug point operated twenty-four (24) hours a day, with three shifts and two "sellers" per shift. Those six "sellers" sold marijuana, cocaine, crack and heroin. Each would sell 100-150 bags per shift of cocaine alone. Each seller would sell 150-200 heroin bags per shift. When Medina returned to the housing project from Florida after defendant became the leader of the drug point, defendant had more sellers than before. One Saúl Flores, for example, who started running cocaine for defendant in 2003, worked seven-day shifts selling about 150 bags of cocaine in a shift. Another runner for defendant in 2003, one Sabino Morales, would pick up 100 bags of cocaine that lasted two or three hours. Medina himself sold 200 to 300 bags of cocaine daily for defendant. On occasions, however, Medina would sell 800 bags of drugs during his shift.

In addition to the amounts of drugs sold while defendant supervised the "point," Medina also testified that since 1998 until defendant became the leader of the "point" in 2003, Feliciano-Rodríguez helped to "deck" or package cocaine in bags and also served as a "runner," delivering the decked cocaine to the "point" for it to be sold and packing up the money.

In addition, forensic chemist Lanette M. Allison testified, based on the bags of cocaine that she examined, that the amount contained in 1,759 of those bags would be equivalent to 1 kilogram of cocaine.

Defendant is responsible under Guideline §1B1.3 for drugs he himself sold, transported, or negotiated, as well as for drug quantities attributable to others that are reasonably foreseeable to him in furtherance of the conspiracy. See U.S.S.G. §1B1.3 cmt. (n.2) (2002); United States v. May, 343 F.3d 1, 6 (1st Cir. 2003). Our finding as to the amount of drugs reasonably foreseeable to defendant need only be supported by a preponderance of the evidence and need not be exact so long as the approximation represents a reasoned estimate. United States v. Santos, 357 F.3d 136, 141 (1st Cir.2004).

Considering that defendant supervised the drug point for at least 397 days from April 2003 to May 2004, and that each day an average of 125 bags of cocaine were sold per seller, or approximately 750 bags per day (125 x 6), that means that, at a minimum, 297,750 bags of cocaine, equivalent to roughly 169 kilos (297,750/1,759=169.27), were sold at the drug point while defendant was its leader. In addition, other drugs were also sold at the "point" during that same period, and defendant also served as a "runner" or decked cocaine at that same "point" beginning in 1998 and throughout the years 1999, 2000, 2001 and 2002.

Clearly, then, we may conclude that defendant "handled, anticipated handling, or . . . reasonably fores[aw]" that in excess of 150 kilograms of cocaine would be handled in the drug conspiracy for which he was convicted. United States v. González-Vélez, ___ F.3d ___, 2006 WL 2924928, at p. 6. The PSR correctly determined a base offense level of 38 under U.S.S.G. §2D1.2(c)(1) based on the drugs amounts attributable to, or foreseeable by, defendant Feliciano, as established by the government's evidence. Defendant's objection to the contrary is OVERRULED.

Defendant has also objected to paragraphs 7-9 of the PSR, alleging that the cases there reported as related to this are not. The government has failed to explain how they are related, and the PSR does not describe that relationship either. We will not assume what does not appear obvious. Defendant's objection to those three paragraphs is SUSTAINED. The PSR shall be amended to delete paragraphs 7-9, inclusive.

Finally, defendant has made a list of several co-defendants sentenced before him and the length of their sentences, which range from 70 to 132 months, the inference being that he too should receive a sentence within such range. Defendant forgets, however, that all those co-defendants pled guilty pursuant to plea agreements where they negotiated the counts of conviction and stipulated reduced amounts of drugs for which they would be held responsible at the time of sentencing (see Plea Agreements, docket entries 116, 135, 146, 164, 180, 191, 215, 307 & 367). His situation is quite different given the consequences of the jury verdict on two drug-trafficking conspiracy counts and two weapons counts. Any sentencing disparity is an offshoot of this reality and, therefore, clearly warranted.

SO ORDERED.

At San Juan, Puerto Rico, on October 30, 2006.

S/CARMEN CONSUELO CEREZO
United States District Judge